IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-03148-PAB-MEH

ELIZABETH HUDSPETH,

      Plaintiff,

v.

CAPITAL MANAGEMENT SERVICES, L.P., a Delaware limited partnership,

      Defendant.

---

## ORDER

---

    This matter is before the Court on the motion for summary judgment [Docket No. 15] filed by defendant Capital Management Services, L.P. ("CMS") and on the motion for summary judgment [Docket No. 16] filed by plaintiff Elizabeth Hudspeth. The motions are fully briefed and ripe for disposition.

## I. BACKGROUND

### A.  Facts

    On September 9, 2011, Equable Ascent Financial, LLC ("EAF") assigned an outstanding debt to defendant for collection. Docket No. 15 at 2, ¶ 1; Plaintiff's Resp. to Def.'s Mot. for Summary Judgment [Docket No. 17] at 2, ¶ 1. On September 11, 2011 and November 4, 2011, defendant sent collection letters to plaintiff, outlining her rights to dispute the debt. Docket No. 15 at 2-3, ¶¶ 4-5; Docket No. 17 at 2, ¶¶ 4-5. Plaintiff received both of these letters. Docket No. 15 at 3, ¶ 8; Docket No. 17 at 3, ¶ 8.

    On November 15, 2011, plaintiff telephoned defendant and recorded the call.

Docket No. 15 at 3, ¶ 6; Docket No. 17 at 2, ¶ 6.  The relevant portions of the call are

as follows:

> MS. HUDSPETH:  Well, what do I have to do to get this off of my credit?

> [CMS representative]:  Well, I mean, the best thing to do would be to pay it off in full.  Would you have the 497.96 available?

> MS. HUDSPETH:  No.

> [CMS representative]:  Okay.  Uh, would you –

> MS. HUDSPETH:  I have to pay this to get it off my credit report?

> [CMS representative]:  Well, that would be the best thing to do.  I mean, if you paid it off in full, it would show the account as being, you know, paid in full.
> If you're looking to be on a payment arrangement, I don't know, probably you'll want a payment arrangement.  Um, I'm not sure how it would show if you're on a payment arrangement.
> Um, if you were interested in a settlement, I can get you a settlement.  Um –

> MS. HUDSPETH:  How long will this be on my credit if I can't pay it?

> [CMS representative]:  Well, that depends.  I mean, I don't report to the credit bureau, ma'am.
> I mean, pretty much just – I mean, once it's on there – I mean, it's pretty much on there I'm guessing until you pay it off.  I mean, that's just going off my personal experience.
> I had an outstanding T-Mobile similar to the balance that's here in the office.  It was up to about $400, and I took – I took advantage of a settlement offer that the company was willing to settle for, which was half of the balance.  And now it's showing up on my credit now as account satisfied in full.  So, I mean, I –

> MS. HUDSPETH:  So this account will be reported to the credit bureaus until it's paid?

> [CMS representative]:  Well, what happens is we – my office, Capital Management Services, reports back to my client, Equitable [sic] Ascent Financial, as either paid in full on a payment arrangement, or account satisfied in full, and they take it from there.
> We're just the third party.  We don't report it to the credit bureaus.

2

They do that for us.

So as soon as you take advantage of an arrangement that's in my office, we notify them.  They take it from there.

MS. HUDSPETH:  I don't know if I owe it or not.

\*\*

MS. HUDSPETH:  What do I have to do to dispute this account?

[CMS representative]:  Well, if you're disputing the account, all you have to do it [sic] send a letter in writing to my office stating why you feel you don't owe the bill.  My company will get a verification of debt from my client and we'll go from there.

MS. HUDSPETH:  Does my dispute have to be in writing?

[CMS representative]:  Yes.  I just said we need a letter of dispute for my office in writing, yes.

MS. HUDSPETH:  Do I need to have a reason to dispute it?

[CMS representative]:  Yes.  You have to send a letter in writing why you don't owe – why you feel you don't owe the bill, yes.

MS. HUDSPETH:  It's the – it's disputed because I don't know if I owe it or not?

[CMS representative]:  Excuse me?

MS. HUDSPETH:  It's disputed because I don't know if I owe it or not?

[CMS representative]:  Is that a question or a statement?

MS. HUDSPETH:  A statement.

[CMS representative]:  Okay.  So you're disputing is what you're asking me?  I mean, I don't understand – did you just ask me a question or are you saying you don't owe it?

MS. HUDSPETH:  I am trying to decide if I should pay this debt or not.

\*\*

MS. HUDSPETH:  How will it affect me if I don't have it to – to pay it

because I don't have the money for this right now.

[CMS representative]:  Well, that – I mean, that depends.  I mean – I don't – I mean, I don't know how would it affect you personally?  I really don't know.
       I mean, it's a delinquent account.  I mean, if you don't make payments on the account, it's going to continue to be delinquent.  And we'll pretty much be right where we started.
       I don't know how it will affect you personally.  I mean, that's not in my control.

**

MS. HUDSPETH:  So it's on my credit until I pay it?

[CMS representative]:  Excuse me?

MS. HUDSPETH:  So it's on my credit until paid?

[CMS representative]:  Yes, as a delinquent account, ma'am, yes.  Ma'am, are you reading like a series of questions of some sort?

MS. HUDSPETH:  No.

Docket No. 15-1 at 3-5, ll.3:23-5:20, 6-7, ll.6:5-7:8, 7-8, ll.7:17-8:3, 8, ll.8:12-20; Docket No. 15 at 3, ¶ 7; Docket No. 17 at 2, ¶ 7.  Plaintiff does not dispute that over the course of this conversation she was "made aware of the fact that CMS would not report her Account to any" credit bureau.  Docket No. 15 at 3, ¶ 12; Docket No. 17 at 2, ¶ 12.

Plaintiff alleges she sent defendant a letter disputing the debt on November 16, 2011.  Docket No. 17-1.  In support of this assertion, she submits a copy of the first page of a settlement offer sent from defendant to plaintiff, on which is handwritten the phrase "Who is this?" alongside an arrow pointing to a statement that EAF is the current creditor.  *Id.*  At the bottom of the letter appears the handwritten statement: "11/16/11.  I dispute this.  I don't know if I owe this.  I never borrowed from this company.  Elizabeth

4

Hudspeth."[1]  *Id*.  There is no evidence that the handwriting on the letter is plaintiff's or

that the letter with the handwritten statement was ever mailed.  Plaintiff has not

submitted a declaration stating that she handwrote the note or posted the letter.

Defendant asserts that it never received this letter and supports this assertion with the

declaration of its Chief Customer Advocate, Kim Flitt.  Def.'s Reply [Docket No. 19] at 2;

Docket No. 15-3 at 2, ¶ 12.  Viewed in the light most favorable to the plaintiff, the letter

on its own does not give rise to a reasonable inference that plaintiff sent it to defendant

to dispute the debt.

### B.  Procedural History

On December 5, 2011, plaintiff filed this case against defendant seeking

statutory damages, attorney's fees, and costs for violations of the Fair Debt Collection

Practices Act ("FDCPA") based on the telephone call described above.  Docket No. 1.

Specifically, plaintiff alleges that defendant violated the FDCPA by making false,

misleading, or deceptive statements, and by using unfair or unconscionable means, to

collect a debt.  Docket No. 1 at 8, ¶ 61; *see* 15 U.S.C. §§ 1692e, e(2)(A), e(8), e(10),

and 1692f.  Defendant's answer asserts a number of affirmative defenses, including the

bona fide error defense.  Docket No. 6 at 10, ¶¶ 1-6.

On June 29, 2012, defendant filed a motion for summary judgment on plaintiff's

claims.  Docket No. 15.  On June 30, 2012, plaintiff filed a motion for summary

judgment on defendant's affirmative defenses.  Docket No. 16.  In responding to

---

[1]This letter is identical in all respects (including the date) to a document that
plaintiff produced in her initial disclosures, save for the presence of the handwritten
note on the document submitted as evidence.  Docket No. 19-1 at 4.

plaintiff's motion, defendant withdrew all defenses except for bona fide error.  Docket No. 18 at 7-9.

## II. DISCUSSION

### A.  Standard of Review

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Bd. of Regents of the Univ. of N. M.*, 599 F.3d 1114, 1116 (10th Cir. 2010).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).

Only disputes of material fact can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### B.  Fair Debt Collection Practices Act

The FDCPA was created in part to "eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  To that end, it prohibits debt collectors from

using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id*. at § 1692e.  The statute specifically prohibits the false representation of the "character, amount, or legal status of any debt" and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id*. at §§ 1692e(2)(A), (10).  It further prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *Id*. at § 1692e(8).  The FDCPA also prohibits the use of "unfair or unconscionable means" to collect a debt. *Id*. at § 1692f.  The statute provides for statutory damages of $1000, as well as costs and attorney's fees, in case of violation, regardless of whether plaintiff has shown any actual damage. *Id*. at § 1692k.

When deciding claims brought pursuant to §§ 1692e and 1692f of the FDCPA, courts have used a "least sophisticated consumer" standard to determine whether a debt collector's representations were false, deceptive, misleading, unfair, or unconscionable. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (listing cases).  The least sophisticated consumer standard ensures protection to all "consumers, even the naive and the trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id*. at 1320.  At least five courts of appeal have applied the least sophisticated standard to alleged violations of § 1692e and § 1692f. *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010);

*Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1002 (3d Cir. 2011);

*Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 612 (6th Cir. 2009); *Donohue v.*

*Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010); *Evory v. RJM Acquisitions*

*Funding, LLC*, 505 F.3d 769, 774 (7th Cir. 2007) (using the "unsophisticated consumer"

standard).  The Tenth Circuit has not expressly adopted this standard, but it has, in an

unpublished opinion, "applied an objective standard, measured by how the least

sophisticated consumer would interpret the notice received from the debt collector."

*Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997)

(internal quotation marks omitted).  Accordingly, because the FDCPA is a remedial

statute that "should be construed liberally in favor of the consumer," *Johnson v. Riddle*,

305 F.3d 1107, 1117 (10th Cir. 2002), the Court will apply the least sophisticated

consumer standard to plaintiff's claims brought pursuant to § 1692e and § 1692f.

Extending protection to the "naive and the credulous," however, does not mean

that debt collectors may be held liable for "unreasonable misinterpretations."  *Clomon v.*

*Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).  The least sophisticated consumer is not

a "dimwit," but rather "uninformed, naive, and trusting."  *Wahl v. Midland Credit Mgmt.,*

*Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009) (quoting *Veach v. Sheeks*, 316 F.3d 690, 693

(7th Cir. 2003)) (internal quotation marks omitted).  Such a consumer possesses

"rudimentary knowledge about the financial world" and is "capable of making basic

logical deductions and inferences," *Id.*, (quoting *Pettit v. Retrieval Masters Creditors*

*Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)) (internal quotation marks omitted),

while lacking the "astuteness of a 'Philadelphia lawyer' or even the sophistication of the

8

average, everyday, common consumer." *Ferree*, 1997 WL 687693  at *1 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)) (internal quotation marks omitted).

At least three circuits have held that false statements must be material in order to be actionable under the FDCPA.  *See Donahue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) (mislabeling combined sum of late fees and interest as interest is not actionable under §§ 1692e or 1692f because it is not material); *Hahn v. Triumph P'ships, LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (labeling original principal plus compounded interest as "principal" was not a material misstatement under the FDCPA); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596-97 (6th Cir. 2009) (holding that materiality requirement applies to a claim under § 1692e).  The courts in these cases applied the least sophisticated consumer standard.  *See Donahue*, 592 F.3d at 1030; *Hahn*, 557 F.3d at 758; *Miller*, 561 F.3d at 592.  The courts have relied in part on the Supreme Court's statement in *Carter v. United States* that federal statutes "punishing a scheme or artifice" to defraud "implicitly contain a materiality requirement."  530 U.S. 255, 266 (2000) (citing *Neder v. United States*, 527 U.S. 1, 23 (1999)) (internal quotation marks omitted).  In addition, the Tenth Circuit, in considering a claim under § 1692g, stated that the "FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless." *Maynard v. Cannon*, 401 F. App'x 389, 397 (10th Cir. 2010) (unpublished).  Materiality is assessed in light of the purpose of the FDCPA, which is to "provide information that helps consumers to choose intelligently, and by definition immaterial information neither

9

contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn*, 557 F.3d at 757-58.  Thus, a false statement is material if it would impact the least sophisticated consumer's decisions with respect to a debt. *See id.*

### C.  Alleged Violations of the FDCPA

Plaintiff alleges that the following statements made by defendant's CMS representative were false and/or misleading in violation of the FDCPA: (1) the debt would remain on plaintiff's credit report indefinitely unless and until paid; (2) in order to dispute the debt, plaintiff had to submit a statement in writing; and (3) in order to dispute the debt, plaintiff had to have a reason.  Docket No. 17 at 6, 9.  Defendant contends that none of the representative's statements were false or misleading and that, even if they were, they were not material.  Docket No. 15 at 2.

### 1.  Statements Regarding Debt Remaining on Credit Report

Plaintiff argues that defendant violated sections 1692e, 1692e(2)(A), 1692e(8), 1692e(10), and 1692f of the FDCPA when, in response to plaintiff asking whether "[the debt is] on my credit until paid?," the representative stated "[y]es, as a delinquent account, ma'am, yes."  Docket No. 15-1 at 8, ll.15-18.  Plaintiff argues that this statement is false because, under the Fair Credit Reporting Act ("FCRA"), credit agencies may not report collection accounts that are more than seven years old.  15 U.S.C. § 1681c(4).  From the perspective of the least sophisticated consumer, who would be expected to trust the representative and not to know the provisions of the FCRA, plaintiff claims that this statement is facially false since it indicates that unpaid

debt can remain on a credit report indefinitely instead of for a maximum of seven years. *See id*. The Court agrees. By failing to qualify his statement that the debt would remain on plaintiff's credit report, the debt collector made a false statement.

Defendant argues that it is improper to read this single statement in isolation, and that the conversation, taken as a whole, communicates that the representative did not know what would happen if plaintiff failed to pay the debt, that defendant did not report outstanding obligations to the credit bureaus, and that arranging a payment plan was plaintiff's best, but not only, option. Docket No. 15 at 10-11. For example, defendant points out that the representative answered, "Well, that depends," in response to the question, "How long will this be on my credit if I can't pay it?" *Id*.; Docket No. 15-1 at 4, ll.16-18. Defendant, however, disregards that the representative went on to state that "it's pretty much on there I'm guessing until you pay it off." Docket No. 15-1 at 4, ll.21-22. The representative also stated later in the conversation that "it's a delinquent account. I mean, if you don't make payments on the account, it's going to continue to be delinquent. And we'll pretty much be right where we started." *Id*. at 7, l.23-8, l.1. Although the representative made clear that defendant did not report directly to the credit bureaus, his statements indicated that reporting was a natural consequence of defendant's actions, as defendant's practice was to report outstanding balances to EAF, which would in turn report to the credit bureaus. *Id*. at 5, 5:6-15. Defendant argues that the representative did not make any false statements because there are exceptions to FCRA's rule that unpaid accounts will drop off credit reports after seven years. Docket No. 15 at 11. However, the existence of exceptions to the general rule does not render true the representative's statement in this instance.

11

Docket No. 19 at 4, n.1 (conceding lack of evidence that FCRA exceptions apply in this case).

Finally, defendant argues that a debt collector does not violate the FDCPA by stating generally that unpaid debt will negatively impact a consumer's credit report. Docket No. 15 at 11 (citing *Pace v. Portfolio Recovery Assocs.*, 2012 WL 2398024, at *4 (W.D. Mo. June 25, 2012). In *Pace*, the court considered the collector's vague statement that "[i]t can cause you issues with your credit report," without the collector defining what "it" referred to. *Id*. Faced with this indefinite statement, the court held that the plaintiff had not alleged a falsehood because "failure to pay a legitimate debt owed generally will result in a negative impact on one's credit report." *Id*. *Pace* does not support defendant's argument in this case because a general statement about "issues" is not analogous to an affirmative answer to a yes-or-no question.

A finding that a statement was false does not automatically render it material. *See Wahl*, 556 F.3d at 646. Plaintiff argues that "[c]redit reporting is a tool used by debt collectors in collecting accounts and would naturally raise concerns on the part of the consumer about the harmful effects to his or her reputation and credit standing." Docket No. 17 at 7. In support of this argument, plaintiff cites a Federal Trade Commission ("FTC") staff opinion letter, which states that "we believe the reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." FTC Staff Opinion Letter to Robert G. Cass by John F. LeFevre; Dec. 23, 1997, 1997 WL 33791232, *available at* http://www.ftc.gov/os/statutes/fdcpa/letters/cass.htm.

Defendant does not claim that the presence of a debt on a credit report would be irrelevant to a consumer's decision to pay it off.  Docket No. 15 at 10-11; Docket No. 19 at 2-4.  Rather, defendant relies on the contention that the representative said nothing misleading because he made it clear that he did not know the answer to plaintiff's questions, that defendant did not report debt, and that arranging a payment plan was a good idea in general.  Docket No. 15 at 11.

Courts have recognized the increasing importance of credit reports in mediating access to financial tools such as mortgages, as well as to other opportunities such as housing and employment.  *See Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1035 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver."); *In re Moyers*, 2008 WL 5377697, at *5, n.4 (Bankr. N.D. W. Va. Dec. 22, 2008) ("Credit reports loom ever more ominously on the national landscape.  They are used for a multitude of critical purposes ranging from obtaining loans to qualifying for employment."); *see also* Brian S. Prestes, *Application of the Equal Credit Opportunity Act to Housing Leases*, 67 U. Chi. L. Rev. 865, 865 (2000) ("Landlords often deny a prospective tenant's lease application based on deficiencies in the tenant's credit report."); Elizabeth D. De Armond, *To Cloak the Within: Protecting Employees from Personality Testing*, 61 DePaul L. Rev. 1129, 1135 (2012) ("According to one measure, sixty percent of employers use credit reports in making employment decisions.").

As stated above, the least sophisticated consumer is uninformed, possessing

only "rudimentary" knowledge of financial practices.  *Wahl*, 556 F.3d at 645.  The least

sophisticated consumer is likely to have a sense that she should be concerned about

her credit report but might not know what actions to take to improve or even monitor it.

*See* U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-05-223, CREDIT REPORTING LITERACY

(2005) ("most consumers understood the basic concepts of credit reporting and had

seen their credit reports . . . [and] knew . . . some impacts of their credit

history—including its effect on their ability to obtain loans and the interest rate on loans

. . . . However, many consumers lacked other important information, such as how long

information stayed on their reports and how their credit history could affect insurance

premiums and employment."), *available at* http://www.gao.gov/products/GAO-05-223.

Accordingly, the Court finds that defendant has failed to demonstrate that falsely stating

that a debt will remain on a credit report indefinitely would be immaterial to the least

sophisticated consumer.

### 2. Statements Regarding Procedures for Disputing a Debt

Plaintiff claims that the representative falsely stated that plaintiff could only

dispute her debt in writing and that she needed a reason in order to do so.  Docket No.

17 at 9-19.

The FDCPA does not define the term "dispute," but uses it in several provisions

that provide varying protections to consumers contesting a debt.  Section 1692g(b)

states that if a consumer notifies a debt collector of a dispute, in writing and within thirty

days, the collector must cease collection activity until it has verified the debt.  In

contrast, § 1692e(8) states that a debt collector's "failure to communicate [to any

person] that a disputed debt is disputed" is a false or misleading practice.  As the latter

14

section does not contain an explicit writing requirement, courts have held that it applies to all disputes, even those made orally.  *See, e.g.*, *Brady v. The Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998) ("Congress's decision not to condition its exercise on the submission of written notification makes logical sense.").  Thus, the Court agrees that a "dispute" does not need to be in writing.

Furthermore, a debt collector cannot require a consumer to have a valid reason or to submit particular types of documentation in order to dispute a debt.  *See DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 162 (2d Cir. 2001) ("The consumer's right to take the position, at least initially, that the debt is disputed does not depend on whether the consumer has a valid reason not to pay."); *Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1240 (D. Haw. 2002) (holding that the "suitable dispute documentation" language in a collection letter violated § 1692g(a)(3) of the FDCPA); *Lucas v. M.R.S. Assocs., Inc.*, 2005 WL 1926570, at *7 (N.D. Ind. Aug. 11, 2005) (recognizing that the "requirement to *provide something*" violates the FDCPA); *Whitten v. ARS Nat'l Servs., Inc.*, 2002 WL 1332001, at *4 (N.D. Ill. June 18, 2002) (holding that in a collection letter, the phrase "suitable dispute document could include," accompanied by a list of documents, "is as bad as an outright contradiction or inconsistency.").

Plaintiff argues that the following exchange is false or misleading:

MS. HUDSPETH:  What do I have to do to dispute this account?

[CMS representative]:  Well, if you're disputing the account, all you have to do it [sic] send a letter in writing to my office stating why you feel you don't owe the bill.  My company will get a verification of debt from my client and we'll go from there.

> MS. HUDSPETH:  Does my dispute have to be in writing?
>
> [CMS representative]:  Yes.  I just said we need a letter of dispute for my office in writing, yes.
>
> MS. HUDSPETH:  Do I need to have a reason to dispute it?
>
> [CMS representative]:  Yes.  You have to send a letter in writing why you don't owe – why you feel you don't owe the bill, yes.

Docket No. 15-1 at 6, ll.12-20.  Defendant does not deny that the representative's statements signified that a dispute had to be in writing and that a consumer needed a reason to dispute the debt.  Docket No. 15 at 11-18.  Instead, defendant argues that the statements were not false or misleading because plaintiff brings her claim under § 1692e(8), which is "only applicable in situations where the debt collector elects to credit report."  Docket No. 19 at 5.  Defendant argues that because it does not credit report–a fact that plaintiff concedes she was made aware of during the telephone conversation–the section is inapplicable in these circumstances.  Docket No. 15 at 3, ¶ 12; Docket No. 17 at 2, ¶ 12; Docket No. 19 at 5-6.  Defendant concludes that plaintiff's claim is based on a strictly hypothetical set of facts: if defendant credit reported and if plaintiff orally disputed the debt, then defendant would have an obligation to mention the dispute when making subsequent reports to credit bureaus, and thus the representative's statement would be false.  Docket No. 19 at 6-7.

Defendant's argument disregards, however, the wording of the statute, which makes it false or deceptive to communicate to "any person" that a disputed debt is undisputed.  15 U.S.C. § 1692e(8).  The plain language of the section indicates that it applies when a collector discloses information regarding a disputed debt to any third party, not just to a credit reporting agency.  *See Brady*, 160 F.3d at 67 ("§ 1692e(8)

16

requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history."); *Perez v. Telecheck Servs., Inc.*, 208 F. Supp. 2d 1153, 1156 (D. Nev. 2002); *Morse v. Dun & Bradstreet, Inc.*, 87 F. Supp. 2d 901, 904 n.1 (D. Minn. 2000) (noting that § 1692e(8) prohibits "threatening to communicate false credit information to third parties").

As defendant's representative stated, defendant "reports back to" EAF "as either paid in full on a payment arrangement, or account satisfied in full, and they take it from there."  Docket No. 15-1 at 5, ll.8-12.  He clarified that "[w]e don't report it to the credit bureaus.  They do that for us."  *Id.* at 5, ll.13-15.  Under § 1692e(8), whenever defendant reports information about plaintiff's debt to EAF, it is required to report the status of that debt as disputed.  *See Brady*, 160 F.3d at 67.  Thus, § 1692e(8) does apply to defendant, and the debt collector's statement to plaintiff that she could only "dispute" her debt in writing was false.

Defendant further argues that its representative was correct in saying that plaintiff needed a reason to dispute her debt because the FDCPA does not entitle a consumer to dispute a debt under § 1692e(8) without a valid reason.  Docket No. 19 at 8-9.  Defendant, however, does not offer any authority for the proposition that a collector can disregard a consumer's dispute under § 1692e(8) if the consumer lacks a particular reason.  Defendant cites two unpublished cases holding that it is not confusing for collectors to include the phrase "[i]f for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter" in a dunning letter.  *Ruth v. M.R.S. Assocs., Inc.*, 2006 WL 1207926 (N.D. Ill. Apr. 4, 2006); *Stines v.*

*M.R.S. Assocs., Inc.*, 2005 WL 2428200 (S.D. Ind. Sept. 30, 2005).  These cases,

however, do not stand for the proposition that collectors may require a specific reason

in order for a consumer to dispute a debt under § 1692e(8) or any other provision of the

FDCPA.  The language of the FDCPA certainly imposes no such requirement.  *See* 15

U.S.C. § 1692e.  Furthermore, cases interpreting § 1692g(b) support the conclusion

that placing hurdles in the path of a consumer seeking to dispute a debt would run

counter to the statute's purpose:

> The consumer's right to take the position, at least initially, that the debt is
> disputed does not depend on whether the consumer has a valid reason not
> to pay. The consumer, for example, may not recognize the name of the
> creditor, may not know whether she incurred the debt, may have a question
> whether the debt (or part of it) has been paid, or may be unsure of the
> amount. Assuming the debt is in fact owed, these would not be "valid
> reasons" not to pay it. Nonetheless, regardless of the absence of a valid
> reason for nonpayment, the collector is obligated by the Act to cease
> collection, pending verification, if it receives the consumer's written
> notification of "dispute," and the Act requires the collector to notify the
> consumer of the collector's obligation to obtain verification upon receipt of
> such notice.

*DeSantis*, 269 F.3d at 162; *see also McKinney v. Cadleway Props., Inc.*, 548 F.3d 496,

507 (7th Cir. 2008) (Rovner, J., concurring in part and dissenting in part) ("To so dispute

a debt, one only need write a letter to [the collector] at the indicated address and state

simply, 'I dispute the debt.'  These four words alone active all of [the collector's]

obligations under the FDCPA.").  Thus, the debt collector's statement that plaintiff needed

a reason to dispute her debt was false.

As stated above, false statements are only actionable if they are also material.

*See Wahl*, 556 F.3d at 646.  The "test for determining whether a debt collector violated

§ 1692e is objective, turning not on the question of what the debt collector knew but on

18

whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Assocs.*, 330 F.3d 991, 995 (7th Cir. 2003). Plaintiff argues that the statements in question are material because they caused her to write a letter to defendant, disputing her debt. Docket No. 17 at 13. However, this evidence is not relevant to plaintiff's claim because the standard for assessing materiality is objective. *See Turner*, 330 F.3d at 995. That is, plaintiff must show that the false statements would mislead the least sophisticated consumer, not that they misled her. As plaintiff does not allege that her conduct is probative of objective materiality, she fails to raise a genuine dispute of material fact with respect to this claim.

### D.  Alleged Violations of Section 1692f

Plaintiff alleges that defendant violated § 1692f by using unfair or unconscionable means to collect her debt. Docket No. 1 at 8, ¶ 60. Defendant has moved for summary judgment on this claim. Docket No. 15 at 2. Plaintiff has not offered any arguments or evidence in support of this claim and therefore has failed to raise a genuine dispute as to any material issue of fact. *See generally* Docket No. 17.

### E.  Bona Fide Error

Plaintiff has moved for summary judgment on defendant's affirmative defense of bona fide error. Docket No. 16 at 6-7. Bona fide error is an affirmative defense available upon the defendant's showing "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). As an affirmative defense, it is only applicable once a violation has been established. *See, e.g.*,

*Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 n.4 (10th Cir. 2004).  Not having

found a violation of the statute, the Court cannot reach the question of whether defendant

has a valid affirmative defense for that hypothetical violation.

## III. CONCLUSION

Accordingly, it is

**ORDERED** that Defendant Capital Management Services, L.P.'s Motion for

Summary Judgment pursuant to Fed. R. Civ. P. 56 [Docket No. 15] is GRANTED in part

and DENIED in part.  It is denied with respect to plaintiff's claim that defendant violated

§ 1692e when its representative stated that the debt would remain on her credit report

indefinitely.  It is granted with respect to plaintiff's claim that defendant violated § 1692e

when its representative stated that plaintiff could only dispute her debt in writing and that

she needed a reason in order to do so and with respect to plaintiff's claim that defendant

violated § 1692f.   It is further

**ORDERED** that Plaintiff Elizabeth Hudspeth's Motion for Summary Judgment as to

Defendant's Affirmative Defenses [Docket No. 16] is DENIED.

DATED February 25, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge